UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAM DIGIANNI,

                      Plaintiff,

       -against-

AMERICAN INTERNATIONAL GROUP,

                      Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

08 CV 4355 (RJD)(LB)

DEARIE, Chief Judge.

Plaintiff William Digianni, proceeding *pro se*, asserts a claim of retaliation under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203(a), against defendant American International Group ("AIG"). For the reasons that follow, defendant's motion for summary judgment is granted.

## BACKGROUND

### A.    <u>Plaintiff's Prior Claims</u>

Prior to filing the instant case, plaintiff filed five lawsuits related to his efforts to become a school teacher. In 2005, plaintiff filed two lawsuits under the ADA concerning his application to sit for the October 2005 administration of the New York State Teacher Certification Examination. See Digianni v. Nat'l Evaluation Sys., Inc., No. 05 CV 4983 (ERK) (LB) (E.D.N.Y., filed Oct. 11, 2005) (dismissed by Judge Korman in July 2007); see Digianni v. Spitzer et al., No. 05 CV 5408 (ERK) (LB) (E.D.N.Y., filed Nov. 17, 2005) (dismissed by Judge Cogan in July 2006). In January of 2006, plaintiff filed a third lawsuit, also under the ADA, which concerned his application to become a teacher through the New York City Teaching Fellows program. See Digianni v. Bloomberg, No. 06 CV 392 (ERK) (LB) (E.D.N.Y., filed Jan.

27, 2006) (dismissed by Judge Korman in December 2007). In early 2008, plaintiff filed two lawsuits accusing the defendants in the three earlier cases of retaliation. See DiGianni v. New York State Department of Education et al., 08 CV 762 (RJD) (LB) (E.D.N.Y., filed Feb. 25, 2008) (dismissed by Judge Dearie in October 2009); DiGianni v. New York City Department of Education et al., 08 CV 923 (RJD) (LB) (E.D.N.Y., filed March 4, 2008) (E.D.N.Y., consolidated into lead case, 08 CV 762, March 28, 2008).

In connection with his application to sit for the certification examination, plaintiff requested accommodations on the basis of his alleged disabilities, which included "verbal-expressive disorder" and "immediate short-term memory disorder." Digianni v. Nat'l Evaluation Sys., slip op. at 2. National Evaluation Systems ("NES"), which administers the test, denied plaintiff's requests, having determined that plaintiff's requests for a word processor and spell checker would "fundamentally alter[] the measurement of the skills the examination is intended to test," and that plaintiff failed to submit sufficient documentation to support his requests for extra time and a separate room. Id. at 3. NES told plaintiff that he could take the exam as scheduled, provide additional supporting documentation and arrange to take the test at a later date, or appeal the denial of his requests. Id.

In early October 2005, plaintiff wrote to NES, complaining that he was not timely notified of the denial of his requested accommodations and requesting that his registration fee be applied to a later examination. Id. Plaintiff filed his first lawsuit, against NES, on October 11, 2005. On October 27, 2005, NES wrote to plaintiff, granting his request to apply the registration fee to the next test and advising him to "consult with a professional to determine what appropriate diagnostic test(s) may be used to document your diagnosed disability." Id. On

November 17, 2005, Digianni filed a lawsuit against New York State, its then-Governor, and the State Department of Education, which was virtually identical to the one against NES. See Digianni v. Spitzer et al., No. 05 CV 5408. Although plaintiff neither submitted additional documentation nor appealed NES's initial denial of his requests, NES wrote to plaintiff in February 2006, offering to grant two of plaintiff's three accommodation requests – for a separate, private room, and for a full day to take the examination. Plaintiff did not respond to NES's offer. See Digianni v. Nat'l Evaluation Sys., slip op. at 4.

Both plaintiff's lawsuits relating to the teacher certification examination were dismissed – one on summary judgment, and the other based on the pleadings. In the case against NES, Magistrate Judge Bloom found that there was no evidence that plaintiff had been discriminated against or denied a reasonable accommodation for his claimed disabilities. Id. at 5-16. Judge Korman, adopting Magistrate Judge Bloom's Report & Recommendation in its entirety, granted summary judgment in favor of the defendants. Plaintiff's subsequent appeal was dismissed by the United States Court of Appeals for the Second Circuit as "lack[ing] an arguable basis in fact or law." Digianni v. Nat'l Evaluation Sys., Inc., No. 07 3136 (2d Cir. Dec. 21, 2007), cert. denied, Digianni v. Nat'l Evaluation Sys., Inc., No. 07 9140, 128 S. Ct. 1677 (Mar. 17, 2008).

In the case against New York State and related defendants, Judge Cogan granted a motion to dismiss the complaint pursuant to Rule 12(b)(6), concluding that plaintiff had failed to sufficiently allege that he had been denied a reasonable accommodation or discriminated against on the basis of any disability. Digianni v. Spitzer, slip op. at 3-17. The Second Circuit affirmed the judgment, Digianni v. Spitzer, No. 06 3622 (2d Cir. Mar. 23, 2009).

In his January 27, 2006 lawsuit against various New York City defendants, plaintiff

3

requested and was granted accommodations of use of a computer with spell check and for double time in connection with his application to the Teaching Fellows program. Digianni v. Bloomberg, slip op. at 2-5. He was, however, ultimately deemed unqualified for acceptance into the program. Id. Despite plaintiff's assertion that the true reason for his rejection from the Teaching Fellows program was discriminatory animus based on his disabilities, Magistrate Judge Bloom found no evidence to support plaintiff's allegation of discriminatory intent. Id. at 8-14. Accordingly, Judge Bloom recommended dismissal of plaintiff's claims, a recommendation that Judge Korman adopted without qualification. Id. On appeal, the Second Circuit affirmed, concluding that plaintiff had "presented no evidence that his disability played any role in the City's determination not to hire him. Indeed, he was afforded the requested accommodation and failed to meet the City's minimum competency requirements." Digianni v. Bloomberg, 311 F. App'x. 492, 494 (2d Cir. 2009), cert. denied, No. 08-10536, 129 S. Ct. 2880 (June 29, 2009).

In his February 25, 2008 lawsuit, plaintiff accused the State defendants and NES of again denying his request for alternative testing accommodations for the State Teacher Certification Examination in retaliation for filing his earlier ADA suits. See DiGianni v. New York State Department of Education et al., slip op. at 5. In his March 4, 2008 suit against the New York City defendants, plaintiff similarly referenced his prior discrimination lawsuits, and alleged that the defendants "cancelled" his December 2007 application to the Teaching Fellows program in retaliation. Id. The cases were consolidated on March 28, 2008. I dismissed the consolidated case on the pleadings because "the complaints offer *no factual support whatsoever* for the assertion that retaliatory animus played any role in either the decision to deny plaintiff's requests

4

for test-taking accommodations or the decision to reject his application to the Teaching Fellows program." Id. at 8 (emphasis in original).

### B. Plaintiff's Current Claim

Plaintiff now asserts an ADA retaliation claim against defendant AIG because it failed to hire him for three positions that he applied for electronically on August 13, 2008.[1] Plaintiff argues that AIG did not hire him because he filed the lawsuits described above. He makes this argument even though none of the lawsuits was against AIG and the positions plaintiff applied for in no way relate to teaching school. Furthermore, plaintiff admits his only basis for believing that AIG knew about his previous lawsuits is he "thought at that time somebody in AIG did a background check through the Internet via Google, Yahoo, whatever and found out that way." (Deposition of William Digianni, February 27, 2009 at 89:22-24.) When pressed further during his deposition about why he thought this, plaintiff stated that "[i]t's so obvious, if I'm able to do it, anybody in AIG can do it," (id. at 90:10-11.), but admitted that he had no evidence that anyone at AIG actually conducted a background check or in anyway learned of his penchant for litigation, (id. at 193:23-194:3) ("Q: My question is, do you have any – A. No. Q: – evidence that someone for AIG did that or from AIG? A: No").

AIG provides unrefuted evidence that plaintiff, who is currently working as a security guard and holds a bachelor's degree in education, was not qualified for the underwriter and management trainee positions he sought and that the investment analyst position was closed before any applications for it were reviewed. Plaintiff's application for the underwriter position

---

[1] The complaint also mentions Title VII of the Civil Rights Act. The Court, however, does not believe that plaintiff intended to bring a Title VII retaliation claim since he only asserts disability discrimination. To the extent that plaintiff could have also asserted a retaliation claim under Title VII, the Court notes that its analysis and holding with respect to plaintiff's ADA retaliation claim would also apply.

was automatically rejected by a computer program because he did not possess the required degree in finance, actuarial science, math or a related area. (Senaida Trevino Affidavit, April 28, 2009, ¶4.) According to Patricia Nastasi, the recruiter for the management trainee position, she "was looking for someone with either a recent business-related college degree or at least 3-4 years of sales experience in consumer lending or consultative sales" and plaintiff's background "[s]elling knives years ago and then being a security guard was not the career track we were looking for." (Patricia Nastasi Affidavit, April 29, 2009, ¶¶3-4.) Additionally, plaintiff did not list a preferred location for transfer, any area in New York State that was more than 150 miles from the New York metro area, which was required for the position. (Id. ¶5.) The management trainee position was taken down in November 2008 without anyone being hired for it. (Id. ¶9.) AIG did not review plaintiff's resume for the investment analyst position because "[t]he position was posted as a 'feeder' position to gather resumes to be reviewed at a later date. However, that date never occurred and the position was closed and never filled." (Sabiha Jivanjee Affidavit, April 27, 2009, ¶2.) Recruiters for all three positions also deny any knowledge of plaintiff's prior lawsuits and affirm that no background check was done on plaintiff. (Trevino Aff. ¶5; Nastasi Aff. ¶¶6-7; Jivanjee Aff. ¶5-6.)

### C. Plaintiff's Other Lawsuits and Threat to Harass AIG

At the end of his deposition, plaintiff threatened to harass AIG into a settlement. He stated: "AIG, are they willing to drag it out for years on end to be brought right back or they can just simply as easy as it is, you know, negotiate a settlement where I don't have – where they won't even have to mess with me anymore, they won't even deal with me." (Digianni Depo. Tr. at 194:19-25.) Plaintiff has made good on his threats to harass and waste the resources of AIG

and others. In addition to the five suits discussed earlier and the instant case, plaintiff has filed six other lawsuits claiming disability and retaliation.[2]

## DISCUSSION

### A. Legal Standard

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts the moving party is entitled to judgment as a matter of law." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]n determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). However, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must...set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

### B. Plaintiff's ADA Retaliation Claim

The same framework is used to analyze motions seeking summary judgment on ADA retaliation claims and Title VII retaliation claims. Treglia v. Town of Manlius, 313 F.3d 713,

---

[2] DiGianni v. Pearson et al., 09 CV 1760 (RJD) (E.D.N.Y.) (filed April 29, 2009, pending); DiGianni v. Orrick, Herrington & Sutcliffe et al., 09 CV 3653 (E.D.N.Y.) (dismissed September 30, 2009); Digianni v. New York State Department of Education, 09 CV 4941 (RJD) (E.D.N.Y.) (dismissed February 4, 2009 for failure to pay the filing fee); Digianni v. Pearson, 09 CV 5275 (RJD) (E.D.N.Y.) (filed November 30, 2009, pending); Digianni v. Pearson et al., 10 CV 206 (RJD) (E.D.N.Y.) (filed November 5, 2009 in S.D.N.Y., transferred to E.D.N.Y. January 19, 2010, pending); Digianni v. American International Group, 10 CV 1359 (filed March 3, 2010 in S.D.N.Y., transferred to E.D.N.Y. March 25, 2010, pending).

719 (2d Cir. 2002). To make a prima facie case for retaliation under the ADA, a plaintiff "must show that (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse employment action and the protected activity." Id.

Plaintiff does not make a prima facie case for retaliation. First, plaintiff does not provide any evidence that AIG was aware of his earlier lawsuits. The only argument that plaintiff makes is that AIG must have discovered the lawsuits since information about them is available on the internet. Such poorly supported allegations do not come close to creating a genuine issue of material fact on summary judgment.

Plaintiff also does not provide any factual support showing or even suggesting that there was a causal connection between his earlier lawsuits and AIG's decision not to hire him. Generic accusations that AIG would not want to hire a troublemaker are not sufficient.

Even if plaintiff had established a prima facie case for retaliation, AIG would still be entitled to summary judgment because AIG has easily met its burden of demonstrating non-discriminatory reasons for its actions and plaintiff has not provided any evidence of pretext. See Cretella v. Liriano, 633 F. Supp. 2d 54, 72-75 (S.D.N.Y. 2009).

### C. Plaintiff's Abuse of the Legal System

"The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a 'history of litigation entailing vexation, harassment and needless expense to [other parties] and an unnecessary burden on the courts and their support personnel.'" Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (quoting Martin-Trigona, 737 F.2d 1254, 1262 (2d Cir. 1984)). Here, plaintiff has filed a

meritless suit and has, as a matter of record, threatened AIG with harassment. Plaintiff is given fair warning. Continued abuse of the judicial process and harassment of public and private litigants must end. Otherwise this, or some other court, will visit upon him costly and significant sanctions.

## CONCLUSION

For the foregoing reasons, defendant AIG's motion for summary judgment is granted and the case is dismissed.

SO ORDERED.

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

Dated: Brooklyn, New York
March 31, 2010